UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRANDE MARIE RODRIGUEZ,

                              Plaintiff,

        v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                              Defendant.

Case No. 2:16-cv-01532-TLF

ORDER REVERSING
DEFENDANT'S DECISION TO
DENY BENEFITS AND
REMANDING FOR PAYMENT OF
BENEFITS

Brande Marie Rodriguez has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court finds that defendant's decision to deny benefits should be reversed, and that this matter should be remanded for an award of benefits.

FACTUAL AND PROCEDURAL HISTORY

On October 8, 2013, Ms. Rodriguez filed an application for disability insurance benefits, alleging that she became disabled beginning May 1, 2013. Dkt. 13, Administrative Record (AR) 22. That application was denied on initial administrative review and on reconsideration. *Id.* A hearing was held before an administrative law judge (ALJ), at which Ms. Rodriguez appeared and testified, as did a vocational expert. AR 39-89.

In a written decision dated April 22, 2015, the ALJ found that Ms. Rodriguez could perform other work existing in significant numbers in the national economy and therefore that she was not disabled. AR 19-38. Ms. Rodriguez's request for review was denied by the Appeals Council on August 5, 2016, making the ALJ's decision the final decision of the Commissioner. Ms. Rodriguez then appealed in a complaint filed with this Court on September 30, 2016. Dkt. 3; 20 C.F.R. § 416.1481.

Ms. Rodriguez seeks reversal of the ALJ's decision and requests a remand for an award of benefits, or in the alternative for further administrative proceedings. She contends the ALJ erred:

(1)     in weighing the medical opinions;

(2)     in discounting Ms. Rodriguez's subjective symptom claims; and

(3)     in finding Ms. Rodriguez could perform other jobs existing in
        significant numbers in the national economy.

For the reasons set forth below, the Court has determined that the ALJ erred in weighing the medical opinions, in discounting Ms. Rodriguez's subjective symptom claims, and in finding Ms. Rodriguez could perform other jobs existing in significant numbers in the national economy. The Court reverses the decision to deny benefits and remands for an award of benefits.

<u>DISCUSSION</u>

The ALJ's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Trevizo v. Berryhill*, 862

ORDER REVERSING DEFENDANT'S DECISION TO
DENY BENEFITS AND REMANDING FOR PAYMENT
OF BENEFITS - 2

F.3d 987, 996 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)).

The ALJ's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1193. Substantial evidence requires the Court to determine whether the ALJ's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Id.* at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I.    The ALJ's Evaluation of the Medical Opinion Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this

"by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

To reject the uncontradicted opinion of a treating or examining physician, the ALJ must provide clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). When a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson*, 359 F.3d at 1195; *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

A.    Treating Physician: Dr. Arbuck

    1.    Dr. Arbuck's Diagnoses

Dr. Arbuck is Ms. Rodriguez's treating physician. AR 30. In a residual functional capacity report dated April 22, 2014, Dr. Arbuck noted that her diagnoses for Ms. Rodriguez were severe hyperthyroidism, severe weight loss secondary to her hyperthyroidism, chronic deep vein thrombosis and pulmonary embolism, diabetes, iron deficiency, and anxiety. AR 467. In that report, Dr. Arbuck stated that Ms. Rodriguez's primary symptoms as a result of these diagnoses were diarrhea, weight loss, chronic fatigue, legs swelling, and palpitations. AR 468. In a letter dated July 11, 2014, Dr. Arbuck stated that "As a result of thyrotoxicosis Brande has constant diarrhea, she has difficulty gaining weight, [and] has chronic fatigue and migraines." AR 475. In a February 10, 2015 progress note, Dr. Arbuck stated that Ms. Rodriguez's fatigue was "probably related to thyroid issues." AR 550. Dr. Arbuck noted that, on a 1-10 scale with 10 being the most severe, Ms. Rodriguez's fatigue was a 10. AR 469. Dr. Arbuck also stated that Ms. Rodriguez's fatigue and other symptoms "constantly" interfere with her ability to pay attention and concentrate. AR 471.

Dr. Arbuck saw Ms. Rodriguez on a monthly basis, beginning on April 1, 2012, treating her for a combination of impairments. AR 71-73, 467. Dr. Arbuck submitted a residual functional capacity (RFC) form in April 2014 that limited standing/walking to two hours per day, with an allowance for getting up and walking around every half hour. AR 469. Furthermore, Dr. Arbuck opined that Ms. Rodriguez could not lift over ten pounds, and restricted reaching with both arms to minimal amounts. AR 469-70.

    2.    The ALJ's Rejection of Dr. Arbuck's Opinion

The ALJ gave minimal weight to Dr. Arbuck's opinion. AR 30. The reasons the ALJ gave for rejecting Dr. Arbuck's opinion included that she based her reports on Ms. Rodriguez's

subjective symptom reports, that she did not report strength testing, that her findings were

inconsistent with Ms. Rodriguez's work history and daily activities, and that she did not address

Ms. Rodriguez's history of noncompliance. For the reasons stated below, the Court finds that the

ALJ did not provide specific and legitimate reasons for rejecting Dr. Arbuck's opinion.

Because some of Dr. Arbuck's findings were contradicted, the ALJ needs to provide

specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Arbuck's

opinion. *Lester*, 81 F.3d at 830-31. Some of Dr. Arbuck's findings were contradicted by state

agency medical consultant Dr. Merrill. AR 30-31. For example, Dr. Merrill stated that he limited

Ms. Rodriguez's lifting to 20 pounds occasionally, that she could stand/walk for up to four hours

per day, and did not note a restriction regarding reaching. AR 98-102. State agency medical

consultant Dr. Thuline essentially agreed with Dr. Merrill's assessment. AR 105-16. Therefore,

the ALJ does not need clear and convincing reasons to reject Dr. Arbuck's opinion, but is

required to identify specific and legitimate reasons.

Even so, the ALJ failed to cite specific and legitimate reasons for rejecting Dr. Arbuck's

opinion. The ALJ wrote that Dr. Arbuck, despite clinical and laboratory findings, "otherwise

based her reports on the claimant's subjective reporting of symptoms." AR 30. Yet, "when an

opinion is not more heavily based on a patient's self-reports than on clinical observations, there

is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th

Cir. 2014) (citing *Ryan v. Comm'r of Soc. Sec. Admin.*, 528 F.3d 1194, 1199-1200 (9th Cir.

2008)). Dr. Arbuck reported her lab results and clinical findings multiple times, in conjunction

with Ms. Rodriguez's self-reports. AR 457-58, 461-62, 475, 513-14. Thus, Dr. Arbuck did not

base her reports more heavily on subjective reporting of symptoms than on clinical observations.

Therefore, the ALJ failed to identify any specific and legitimate reasons for rejecting the treating physician's opinion.

The ALJ also may not reject the treating physician's opinion based on "questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r Soc. Sec. Admin.*, 528 F.3d at 1199-1200 (citing *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001)). There is no evidence to suggest that Dr. Arbuck believed that Ms. Rodriguez was being untruthful in reporting her symptoms. Therefore, the ALJ did not provide a specific and legitimate reason for dismissing Dr. Arbuck's opinion where the ALJ stated that Dr. Arbuck's opinion was based on Ms. Rodriguez's responses. AR 31.

The ALJ also noted that Dr. Arbuck's findings do not report strength testing. AR 31. However, the ALJ does not provide insight as to why a lack of strength testing would call into question Dr. Arbuck's findings' validity. Furthermore, the ALJ may not speculate that a treating physician is being untruthful for the purpose of helping a patient obtain disability benefits. *Lester*, 81 F.3d at 832. This is not a specific and legitimate reason for dismissing Dr. Arbuck's opinion.

The ALJ also determined that Dr. Arbuck's findings were inconsistent with Ms. Rodriguez's work and personal activities. The ALJ observed that "Contrary to Dr. Arbuck's assessment from April 2014, the claimant[] was gainfully employed for a prolonged period between 2012 and May 2013, during which she worked approximately eighty hours per week as an office manager." AR 31. Where an ALJ rejects a medical opinion as inconsistent with a claimant's activities, the record must contain specific details about the nature, frequency, and/or duration of those activities that would indicate they are inconsistent with the opinion. *Trevizo v.*

*Berryhill,* 862 F.3d 987, 998 (9th Cir. 2017). The ALJ did not indicate how Ms. Rodriguez's work history was incompatible with Dr. Arbuck's findings, particularly where Dr. Arbuck also noted that Ms. Rodriguez needed to "spend more time on taking care of herself and her medical treatments" in her RFC report. AR 472. The ALJ did not outline which of Ms. Rodriguez's personal activities contradict Dr. Arbuck's report, or how those activities contradict the report. Therefore, the ALJ did not provide a specific and legitimate reason in dismissing Dr. Arbuck's opinion to the extent the ALJ relied on Ms. Rodriguez's activities.

Finally, the ALJ rejected Dr. Arbuck's report for failing to make reference to "the compliance issues documented in her treatment records." AR 31. However, a claimant may not be denied disability benefits because of her failure to obtain treatment if the treatment is unaffordable. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995). Indeed, treatment notes indicate that the main reasons for Ms. Rodriguez's noncompliance were problems regarding insurance coverage, taking care of her mother (who was ill), childcare responsibilities, and financial concerns. AR 270, 277, 285, 428-429, 435. Therefore, failing to make reference to compliance issues was not a specific and legitimate reason for dismissing Dr. Arbuck's opinion.

In sum, none of the reasons the ALJ gave for giving Dr. Arbuck's opinion little weight are specific, legitimate, and supported by the record. Therefore, the ALJ erred in giving Dr. Arbuck's opinion little weight.

B.      Non-examining Physicians: Drs. Merrill and Thuline

The ALJ assigned "some weight" to the opinions of non-examining state agency medical consultants Drs. Merrill and Thuline. AR 31. However, because the ALJ did not consider all of the factors of supportability outlined in 20 C.F.R. § 404.1527(c), the ALJ erred in assigning some weight to the opinions of Drs. Merrill and Thuline.

The ALJ assigned "some weight" to the opinions of Drs. Merrill and Thuline. AR 31. In Dr. Merrill's assessment in February 2014, he opined that Ms. Rodriguez could perform light work, except that she could stand and/or walk for four hours in an eight-hour day; that she could occasionally climb ladders, rope, or scaffolding; that she could frequently crawl, crouch, kneel, stoop, and climb ramps; and that she should avoid exposure to extreme cold, hazards, or irritants such as fumes, dust, gases, or poor ventilation. AR 99-100. In March 2014, Dr. Thuline affirmed Dr. Merrill's assessment. AR 112-14.

To the extent that the ALJ does not give a treating source's opinion controlling weight, and incorporates the opinion of a non-examining source, the ALJ should consider the factors of supportability presented by the source, consistency of the opinion with the record as a whole, the specialization of the source, and other facts. 20 C.F.R. § 404.1527(c)(3)-(6). Here, the ALJ did not consider the supportability factors, and did not address the minimal explanations Drs. Merrill and Thuline provided to support their opinions. While the ALJ did address the consistency of the opinion with the record as a whole, the ALJ also found that Drs. Merrill and Thuline did not properly address the reports of fatigue in the record. Because he did not properly consider the factors in § 404.1527(c), the ALJ erred in giving "some weight" to the opinions of Drs. Merrill and Thuline.

II.    The ALJ's Assessment of Ms. Rodriguez's Subjective Symptom Reports

Questions of credibility are solely within the control of the ALJ. *Sample*, 694 F.2d at 642. The Court should not "second-guess" this determination regarding a claimant's subjective symptom reports. *Allen*, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination when that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be

discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan*, 242 F.3d at 1148.

A two-step analysis is required in assessing a claimant's subjective symptom testimony: "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. If the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks and citations omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The evidence as a whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen*, 80 F.3d at 1284. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *Id.*

Here, the ALJ found that Ms. Rodriguez satisfied the first step of the analysis by determining "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 27. Because there is no affirmative evidence of malingering, the ALJ must support his subjective testimony determination with clear and convincing reasons.

## A.   Ms. Rodriguez's Reasons for Leaving Work

The ALJ discredited Ms. Rodriguez's subjective symptom reports, because he found that her reasons for leaving work were not related to her functional capacity. AR 28. However, this Court disagrees because Ms. Rodriguez stated that she left work due to her severe fatigue, which has been part of her reported symptoms, and was connected by Dr. Arbuck to her impairments, particularly hyperthyroidism. AR 28, 66-67, 468, 550.

Leaving work for reasons other than those related to impairments may be a clear and convincing reason to find a claimant's testimony unreliable. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) In *Bruton,* the ALJ gave "cogent reasons for disregarding [the claimant's] testimony," because the claimant had "left his job because he was laid off, rather than because he was injured." *Id.*

The ALJ found that Ms. Rodriguez's reasons for leaving work were not related to her functional capacity. In his decision, the ALJ cites Ms. Rodriguez's testimony at the hearing. Ms. Rodriguez stated that work at the coffee shop had become too stressful to continue working, as she had been working over eighty hours per week. She said she could not continue working for the coffee shop at forty hours per week because her employer was still too demanding. The ALJ wrote, "I then asked her if she could have continued to work with reasonable expectations and a reasonable quantity of work. She gave an equivocal response and ultimately stated that she was too tired…to continue working." AR 28.

Although the ALJ found that Ms. Rodriguez's reasons for leaving work were not related to her functional capacity, Ms. Rodriguez stated that she was too tired to work. Fatigue has been part of Ms. Rodriguez's reported symptoms, and Dr. Arbuck has reported those complaints previously. AR 468, 471. Furthermore, Ms. Rodriguez also stated that her need to frequently use the restroom also was a reason she decided to leave her job. AR 67. Dr. Arbuck noted that

diarrhea was a symptom of Ms. Rodriguez's impairments. AR 468, 574. The record also shows that Ms. Rodriguez suffered severe weight loss as a result of her condition(s). She is approximately six feet tall (AR 361), and her weight fluctuated from 164 pounds (AR 285) in January of 2013, to 145 pounds (AR 361) in May of 2013, and 152 lbs. (AR 271) in September 2013, then to 173 pounds. (AR 549) in February of 2015. Weight fluctuations, chronic fatigue, being extraordinarily thin, and muscle breakdown are complications associated with Ms. Rodriguez's thyroid disease. AR 467-468, 569. Therefore, the ALJ's determination that Ms. Rodriguez's reasons for leaving work were somehow undermined by her subjective symptom reports is not a clear and convincing reason.

B.    Ms. Rodriguez's Receipt of Unemployment Benefits

The ALJ also found that Ms. Rodriguez's receipt of unemployment benefits in 2013 after leaving her job was "inconsistent with her allegations of disability." AR 28. This Court disagrees because there is no evidence to suggest that Ms. Rodriguez held herself out for full-time work, and because the ALJ improperly discredited Ms. Rodriguez's testimony that Dr. Arbuck advised her to leave work and apply for disability benefits.

"[R]eceipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime." *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008) (citing *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir.1988)). But where the record "does not establish whether [the claimant] held himself out as available for full-time or part-time work," such a "basis for the ALJ's credibility finding is not supported by substantial evidence," as "[o]nly the former is inconsistent with his disability allegations." *Id.*

The ALJ noted that receipt of unemployment benefits does not preclude the receipt of SSI, but also stated that in the application for unemployment benefits, Ms. Rodriguez was required to attest that she was "ready, able, and willing, immediately to accept any suitable work

which may be offered" to her. AR 28. However, as in *Carmickle*, the record does not establish whether Ms. Rodriguez held herself out for full-time or part-time, only that she would "'accept any *suitable* work which may be offered' to her." AR 28. Therefore, there is not sufficient evidence to conclude that Ms. Rodriguez held herself out for full-time work, thus undermining her subjective symptom reports.

The ALJ discredited Ms. Rodriguez's testimony that Dr. Arbuck had advised her to leave work and apply for disability benefits, because there was no record of that conversation in Dr. Arbuck's treatment notes. AR 28. Yet the record indicates that on May 2, 2012, Dr. Arbuck noted that she recommended Mr. Rodriguez should work only half-time and "advance as tolerated". AR 290. Later, Dr. Arbuck confirmed on April 1, 2015, that Ms. Rodriguez was not "able to participate in any employment right now." AR 574. Dr. Arbuck also noted that Ms. Rodriguez's condition deteriorated from April 2012 to April 2015. *Id.*

"[A]n ALJ 'may not disregard [a claimant's testimony] solely because it is not substantiated affirmatively by objective medical evidence." *Trevizo*, 862 F.3d at 1001 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)). The record, taken as a whole, supports Dr. Arbuck's notations in 2012 and 2015 that Ms. Rodriguez could not work full-time, and that her condition deteriorated to the point where she could not work at all in April of 2015. Therefore, Ms. Rodriguez's receipt of unemployment benefits is not a clear and convincing reason to determine that her subjective symptom reports are not credible.

C.    Ms. Rodriguez's Noncompliance with Treatment Recommendations

The ALJ noted noncompliance with treatment as a reason for finding Ms. Rodriguez's subjective symptom testimony not credible. AR 27-28. However, this Court disagrees because the ALJ did not consider that Ms. Rodriguez explained to her treating physicians that family responsibilities (taking care of children and her own ill mother), lack of insurance, financial

reasons, and being unable to get past a denial reaction to the severity of her condition, were reasons for her noncompliance. AR 270, 277, 285 428-429, 435.

Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Where a reason is asserted, the ALJ should address the believability of that reason. *Trevizo*, 862 F.3d 987, 1001-1003 (9th Cir. 2017). Failure to comply with treatment because of insurance problems, lack of insurance, and/or because one cannot afford the treatment, even if one is insured, are satisfactory reasons for noncompliance. *Id.* at 1002-1003. However, instances of noncompliance that are not explained in the record may be properly weighed against the claimant. *Id.* at 1003.

Ms. Rodriguez explained to her doctors that childcare responsibilities, lack of access to insurance, financial difficulties, taking care of her ill mother, and a psychological state of denial were reasons for her noncompliance. AR 277, 288, 428-429, 435. Therefore, as in *Trevizo*, Ms. Rodriguez gave a reasonable explanation for her noncompliance when she stated that financial reasons and overwhelming family responsibilities prevented her from compliance. Although Ms. Rodriguez's medical records contain some entries where noncompliance remains unexplained, those few instances "do[] not constitute substantial evidence supporting a finding that [a claimant's] symptoms were not as severe as she testified." *Trevizo*, 862 F.3d at 1004. Therefore, Ms. Rodriguez's noncompliance is not a clear and convincing reason for determining that her subjective symptom testimony lacks credibility.

D.     Ms. Rodriguez's Activities

The ALJ found that "[t]he claimant's activities since her alleged onset date are inconsistent with her allegations of debilitating fatigue and pain symptoms." AR 30. The ALJ cited these activities as visiting a park, operating motor vehicles, completing puzzles, traveling

from Washington to California, and attending a football game while in California. *Id.* However, this Court disagrees because the activities would be possible despite Ms. Rodriguez's limitations, and because many of the activities are daily activities that do not undermine allegations of disability.

Daily activities may only be used to find against a claimant's subjective symptom reports if "the claimant is able to spend 'a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" *Hostrawser v. Astrue*, 364 Fed. Appx. 373, 378 (9th Cir. 2010) (citation omitted). A claimant does not need to "vegetate in a dark room excluded from all forms of human and social activity" in order to show disability. *Cooper v. Brown*, 815 F.2d 557, 561 (9th Cir. 1987) (internal quotation marks omitted). "Many home activities are not easily transferable to what may be the more grueling environment of the workplace." *Fair*, 885 F.2d at 603.

Visiting a park, operating a motor vehicle, completing puzzles, traveling from one state to another, and attending a sporting event are activities that are consistent with Ms. Rodriguez's subjective symptom reports. Ms. Rodriguez testified that she went to California to visit her children (who live there with their father, Ms. Rodriguez ex-husband). AR 48. She stated that she went to Christmas in the Park with her children for an hour before they left, and that they attended the football game for approximately one half before they left. AR 50, 53-54. These activities were not daily, and ultimately were cut short due to Ms. Rodriguez's limitations. Ms. Rodriguez cannot be expected to "vegetate in a dark room." *Cooper*, 815 F.2d at 561.

Daily activities, such as driving, are not evidence of nondisability, and Ms. Rodriguez's driving is not even daily. Ms. Rodriguez testified that if someone else can drive her, she has them drive her to her doctor's appointments. Even if no one is available to driver her, then Ms.

Rodriguez estimated that she drives to doctor's appointments about two times per week. AR 69. Ms. Rodriguez's driving is not a substantial part of her day such that it would objective discredit her subjective symptom testimony. *See Fair*, 885 F.2d at 603; *Yawitz v. Weinberger*, 498 F.2d 956, 960 (8th Cir. 1974) ("It should first be noted that 'the mere fact that plaintiff can drive a car and is mobile does not establish that he can engage in substantial gainful activity.'")

Ms. Rodriguez's hobby of completing puzzles is also irrelevant to the analysis of disability. While Ms. Rodriguez spends time at home completing puzzles, she also testified that she changes position and posture, such as sitting at a table or on the floor, depending on how she feels. AR 54. Her discomfort in maintaining posture reflects the objective medical findings in her record, including her RFC. Therefore, this does not demonstrate an inconsistency with her limitations or her subjective symptom reports.

Finally, the ALJ cited the transportation arrangements of her trip from Washington to California as a reason to discredit Ms. Rodriguez's subjective symptom testimony. He noted that the train ride was approximately 26 hours. AR 30. The ALJ stated that Ms. Rodriguez sat for 26 hours, yet Ms. Rodriguez testified that she often had to alternate sitting and standing. AR 48. She stated that she "couldn't get comfortable" and "was miserable." AR 48-49. Without further evidence, Ms. Rodriguez's trip to California does not suggest inconsistency with her limitations or her subjective symptom testimony. *See Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999) ("Evidence that Tackett took a four-day road trip to California, without more, is insufficient to counter the opinion of Tackett's treating physicians and the ALJ's own medical examiner that Tackett needs to shift positions 'every 30 minutes or so.'").

In sum, the ALJ did not provide "specific, clear, and convincing" reasons for discrediting Ms. Rodriguez's subjective symptom testimony based on the record as a whole.

III.    The ALJ's Step Five Determination

In assessing Ms. Rodriguez's RFC, the ALJ stated Ms. Rodriguez would need to elevate her left leg to a height of one foot when seated. AR 26. In his examination of the vocational expert, the ALJ provided a hypothetical that described Ms. Rodriguez's limitations, including requiring "the left foot to be elevated to a height of one foot from the floor while seated." AR 84. The vocational expert responded that there would not be jobs in the national economy for that person because "the requirement for an elevated foot would be a special accommodation not typically common in the workplace." *Id.*

Then, the ALJ asked if a person could "simply put a lift of some sort underneath their foot…without even the knowledge of anyone else while they're working." *Id.* The vocational expert answered affirmatively, and stated "I would think so and there are some jobs that a person might be able to do that, primarily telephone work, but that would be within the hypothetical," yet the vocational expert also responded that a special accommodation of informally boosting up the worker's foot by 12 inches (as proposed by the ALJ) was added to the hypothetical. AR 84-85. The vocational expert then stated that the jobs of "callout operator" and "charge account clerk" would be available to a person situated within the ALJ's hypothetical. AR 85. When Ms. Rodriguez's attorney questioned the vocational expert, the expert was unable to state if he had seen anyone at the job he identified lift their feet informally. AR 88. The ALJ disallowed counsel's cross-examination about whether the typical working conditions for the type and number of available jobs, according to the Bureau of Labor Statistics, would include an informal device by which a worker might be able to hide his or her foot and elevate it 12-inches – routinely hiding from the employer and co-workers – so the 12-inch elevation under a desk or some other cloaking device would not ever be discovered. AR 87.

Ms. Rodriguez argues that the ALJ improperly performed the step five analysis by failing to ask the vocational expert if his testimony was consistent with Dictionary of Occupational Titles (DOT), and by posing an improper hypothetical to the vocational expert. The Court agrees. The weight of the medical evidence, considering the record as a whole, does not support the hypothetical.

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett*, 180 F.3d at 1098-99; 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101. An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). When the Social Security Administration determines whether an applicant is or is not disabled, the Administration is prohibited from taking into account the existence of a possible reasonable accommodation. *See, Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 803 (1999). The vocational expert's testimony must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

A.    SSR 00-4p Requirements

Not all differences between a vocational expert's testimony and a description in the Dictionary of Occupational Qualifications are actual conflicts. *Gutierrez v. Colvin,* 844 F.3d 804,

808 (9th Cir. 2016). In order for a difference to be a conflict, it must be obvious or apparent; only then will it trigger a duty for the ALJ to inquire about the conflict. *Lamear v. Berryhill,* No. 15-35088, __ F.3d __, 2017 WL 3254930 (9th Cir. August 1, 2017). If an actual conflict exists, an ALJ may not "rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether and how the testimony conflicts with the *Dictionary of Occupational Titles.*" *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007); *see also* SSR 00-4p, 2000 WL 1898704, at *2. Ordinarily the ALJ has an affirmative responsibility to ask the vocational expert about possible conflicts between his or her testimony and information in the DOT, and this procedure will help avoid unnecessary appeals. *Lamear,* 2017 WL 3254930, at *3; *Massachi*, 486 F.3d at 1152. If there is a conflict, the ALJ also is required to explain in his or her decision how the discrepancy or conflict was resolved. *Lamear,* 2017 WL 3254930, at *4; SSR 00-4p, 2000 WL 189704, at *4.

Here, the ALJ did not satisfy the SSR 00-4p requirement to ask the vocational expert whether there was any conflict between the expert's testimony and the DOT. While the ALJ wrote that "I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT) or is otherwise based on his professional experience and expertise," the ALJ did not ask the vocational expert about any conflict at the hearing, and did not provide reasons for his determination that there is no conflict. AR 33.

As described in the DOT, a call-out operator and charge-account clerk includes the following physical demands: "Exerting up to 10 pounds of force occasionally . . . and/or negligible amount of force frequently. . . to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve

walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met." DOT 237.367-014, 1991 WL 672186; DOT 205.367-014, 1991 WL 671715.

Making an assumption that a worker will be allowed to informally raise his or her foot 12-inches and hide the fact that this accommodation has occurred, as part of the hypothetical for analyzing availability of future work is an assumption that conflicts with the DOT descriptions because it assumes an accommodation. *See, Overlund v. Berryhill,* 2017 WL 1136674, at \*9-\*10 (D. Or. March 27, 2017) (rejecting the ALJ's analysis at Step four where the RFC included an assumption that the worker would find a way to accommodate a limitation and return to work as a bookkeeper by elevating his or her leg 12-18 inches). This is outside the boundaries of the legal criteria. *Compare, Gutierrez v. Colvin,* 844 F.3d 804, 807-809 (9th Cir. 2016) (it is uncommon for cashiers to reach overhead, and there was no apparent or obvious conflict between the vocational expert's testimony and the DOT) and *Loop v. Colvin,* 651 Fed. Appx. 694, 696-697 (9th Cir. 2016) (observing that a sit-stand desk is commonly provided in many call center workplaces and does not constitute a reasonable accommodation because this type of desk is how the call center representative job is commonly performed in the national economy); *with Lamear,* 2017 WL 3254930, at \*3 (office helper, mail clerk, or parking lot cashier are jobs for which a person might need to "handle, finger and feel with the left hand" and the ALJ's failure to inquire about this apparent or obvious conflict between the vocational expert's testimony and the DOT description of job requirements was not harmless). The ALJ's failure to resolve this "apparent inconsistency" leaves the Court with a "gap in the record that precludes [it] from determining whether the ALJ's decision is supported by substantial evidence." *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015).

B.    The ALJ's Hypothetical

The ALJ's reliance on the vocational expert's testimony is unreasonable based on the record as a whole. Though the vocational expert said that there would be some jobs in which someone with Ms. Rodriguez's impairments could work, he said that would "be within the hypothetical," in which the employee elevates their foot without the employer's knowledge. AR 84. Furthermore, the vocational expert could not testify as to how many workplaces he had seen where employees hid the limitation of a foot elevation from their employer. AR 88. Thus, it is unreasonable as a matter of law to include an assumption that someone with Ms. Rodriguez's limitations would be expected to routinely hide the foot elevation of 12-inches every day the worker is on the job, and keep it a secret from an employer.

The ALJ found Ms. Rodriguez could perform other jobs existing in significant numbers in the national economy, based on the vocational expert's testimony offered at the hearing in response to a hypothetical question concerning an individual with the same age, education, work experience and RFC as Ms. Rodriguez. AR 32-33. However, because the ALJ erred in the hypothetical posed to the vocational expert, the expert's testimony and the ALJ's reliance thereon cannot be said to be supported by substantial evidence or free of error.

IV.    Remand for an Award of Benefits

The Court may remand this case "either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." *Id.*

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002). This is one of those unusual cases where the record has been fully developed and where further proceedings would serve no useful purpose.

As discussed above, the ALJ accepted that Ms. Rodriquez would need to elevate her left leg to a height of one foot when seated, and included that same limitation in the hypothetical he posed to the vocational expert. The vocational expert responded that there would be no jobs in the national economy for an individual with such a limitation, because "the requirement for an elevated foot would be a special accommodation not typically common in the workplace." AR 84. Indeed, the vocational expert could neither state if he had ever seen anyone perform the jobs he identified lift their feet informally, nor testify as to how many workplaces he had seen where employees hid the limitation of a foot elevation from their employer. AR 88. Because there is no evidence that Ms. Rodriguez's need to elevate her leg would be accommodated in the workplace, the ALJ has failed to establish his burden of proving other jobs exist in significant numbers the national economy that Ms. Rodriguez could perform. It is clear, therefore, that the ALJ would be required to find her disabled based on the vocational expert's testimony.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and

this matter is REMANDED for an award of benefits.

Dated this 18th day of August, 2017.

*Theresa L. Fricke*

Theresa L. Fricke
United States Magistrate Judge